FILED
October 15, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-14-00567-CR
7194905
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/1/2015 4:29:15 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00567-CR

IN THE
COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
OF TEXAS, AT AUSTIN

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/1/2015 4:29:15 PM
JEFFREY D. KYLE
Clerk

**ARTY PRICE**
Appellant

v.

**The State of Texas**
Appellee

On Appeal In Case Number 13-1650-K26
From the 26th District Court of Williamson County
The Hon. Billy Ray Stubblefield, Judge Presiding

# Brief on Appeal

Submitted by:

The Law Offices of Ariel Payan
1012 Rio Grande
Austin, Texas  78701
Tel.  512/478-3900
Fax:  512/472-4102
arielpayan@hotmail.com

**Ariel Payan**
State Bar No. 00794430

Court-Appointed Attorney for Appellant

**Oral Argument Not Requested**

# Table of Contents

Certificate of Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Point of Error. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Facts Relevant to Appeal.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certificate of Delivery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## Certificate of Parties

Pursuant to Rule 38.1(a), Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to the trial court's final judgment and their counsel in the trial court, as well as appellate counsel, so the members of the court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case and so the Clerk of the Court may properly notify the parties to the trial court's final judgment or their counsel, if any, of the judgment and all orders of the Court of Appeals.

### Appellant

Arty Price
Michael Unit TDCJ-ID No. 1947862
2664 FM 2054
Tennessee Colony, TX 75886

Appellate Counsel:                                    Trial Counsel:

Ariel Payan                                              Ray Bass
1012 Rio Grande                                     120 West 8th St
Austin, Texas  78701                              Georgetown, TX78626

### State of Texas
Jana Duty
405 S. Martin Luther King Box 1
Georgetown, TX 78626

Appellate Counsel:                                    Trial Counsel:
                                                               Geoffrey Puryear
John Prezas                                             Lauren McLeod

# Index of Authorities

**Federal Cases**:

California v. Trambetta, 467 U.S. 479 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Chambers v. Mississippi, 410 U.S. 284 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Crane v. Kentucky, 476 U.S. 683 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105 (1974). . . . . . . . . . . . . . . . . . . . 21

Gilmore v. Taylor, 508 U.S. 333, 343 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Oliver, 333 U.S. 257, 273 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). . . . . . . . . 11, 12, 14

United States v. McClure, 546 F.2d 670 (5th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . 19

United States v. Herrera, 600 F.2d 502, 505 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . 19

Washington v. Texas, 388 U.S. 14 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Webb v. Texas, 409 U.S. 95 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542 (2003). . . . . . . . . . . . . . . 14

Williams v. Taylor, 529 U.S. 362, 395-99, 120 S.Ct. 1495, 1514–16 (2000). . . . . . . . . 15

Williams v. Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 1514–15, 146 L.Ed.2d 389 (2000)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14


**Texas Cases**:

Abdnor v. State, 871 S.W.2d 726, 732 (Tex.Cr.App. 1994). . . . . . . . . . . . . . . . . . . . 23

Almanza v. State, 686 S.W.2d 157, 171 (Tex.Cr.App. 1984). . . . . . . . . . . . . . . . . . 23, 25

Andrews v. State, 159 S.W.3d 98, 102 (Tex.Cr.App. 2005). . . . . . . . . . . . . . . . . . . 14

Brown v. State, 122 S.W.3d 794, 798 (Tex.Cr.App. 2003), cert. denied, 541 U.S. 938, 124 S.Ct. 1678 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Burge v. State, 443 S.W.2d 720, 724 (Tex.Cr.App. ), cert. denied, 396 U.S. 934, 90 S.Ct. 277 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Clark v. State, 878 S.W.2d 224 (Tex.App.- Dallas 1994). . . . . . . . . . . . . . . . . . . . . 25

Ex parte Lane, 303 S.W.3d 702, 707 (Tex.Cr.App. 2009). . . . . . . . . . . . . . . . . . . . . 11

Garcia v. State, 960 S.W.2d 329, 333 (Tex.App.--Corpus Christi 1997, no pet.). . . . . . . 7

Hernandez v. State, 952 S.W.2d 59, 74 (Tex.App.--Austin 1997), remanded on other grounds, 957 S.W.2d 851 (Tex.Cr.App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Herron v. State, 86 S.W.3d 621, 632 (Tex.Cr.App. 2002). . . . . . . . . . . . . . . . . . . . . 26

Jackson v. State, 548 S.W.2d 685, 695 (Tex.Cr.App. 1977). . . . . . . . . . . . . . . . . . . . 24

Jackson v. State, 756 S.W.2d 82, 85 (Tex.App.—San Antonio 1988), rev'd on other grounds, 772 S.W.2d 117 (Tex.Cr.App. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Jordan v. State, 883 S.W.2d 664, 665 (Tex.Cr.App. 1994). . . . . . . . . . . . . . . . . . . . 7

Koehler v. State, 679 S.W.2d 6, 9 (Tex.Cr.App. 1984). . . . . . . . . . . . . . . . . . . . . . . 22

Lagrone v. State, 84 Tex.Crim. 609, 615-16, 209 S.W. 411, 415 (1919). . . . . . . . . . . . 24

Lair v. State, 265 S.W.3d 580, 594 (Tex.App.–Houston [1st Dist.] 2008, pet. ref'd). . . 14

Livingston v. State, 782 S.W.2d 12, 14 (Tex.App.—Dallas 1989, pet. ref'd). . . . . . . . . 24

McClory v. State, 510 S.W.2d 932, 934 (Tex.Cr.App. 1974). . . . . . . . . . . . . . . . . . . 25

McIntire v. State, 698 S.W.2d 652, 658 (Tex.Cr.App. 1985). . . . . . . . . . . . . . . . . . . . 6

Miller v State, 36 S.W.3d 503 (Tex.Cr.App. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Miller v State, 42 S.W.3d 343 (Tex.App.-Austin 2001).. . . . . . . . . . . . . . . . . . . . . . 19, 20

Posey v. State, 966 S.W.2d 57, 60 (Tex.Cr.App. 1998). . . . . . . . . . . . . . . . . . . . . . . . . 23

Reyes v. State, 849 S.W.2d 812, 816 (Tex.Cr.App. 1993). . . . . . . . . . . . . . . . . . . . . . . . 6

Rivera v. State, 123 S.W.3d 21, 31 (Tex.App.–Houston [1st Dist.] 2003, pet. ref'd). . . 14

Sandoval v. State, 929 S.W.2d 34, 36 (Tex.App.--Corpus Christi 1996, pet. ref'd). . . . 7

Shanklin v. State, 190 S.W.3d 154, 165 (Tex.App.–Houston [1st Dist.] 2005, pet. dism'd)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sharpe v. State, 648 S.W.2d 705, 706 (Tex.Cr.App. 1983). . . . . . . . . . . . . . . . . . . . . . . 24

Sparks v. State, 943 S.W.2d 513, 517 (Tex.App.—Fort Worth 1997, pet. ref'd).. . . . . . 22

State v. Evans, 843 S.W.2d 576, 578-79 (Tex.Cr.App. 1992). . . . . . . . . . . . . . . . . . . . . . 6

State v. Read, 965 S.W.2d 74, 77 (Tex.App.--Austin 1998, no pet .). . . . . . . . . . . . . . . . 6

Stephenson v. State, 494 S.W.2d 900, 909-10 (Tex.Cr.App. 1973). . . . . . . . . . . . . . . . . . 6

Wallace v. State, 106 S.W.3d 103, 108 (Tex.Cr.App. 2003). . . . . . . . . . . . . . . . . . . . . . . 7

Ward v. State, 156 Tex.Crim. 472, 243 S.W.2d 695, 696–97 (1951). . . . . . . . . . . . . . . 25


**Cases from Other Jurisdictions**:

Commonwealth of Pennsylvania v. Greene, 366 A.2d 234, 237 (Penn.S.Ct. 1976). . . . 18

New Mexico v. Duncan, 830 P.2d 554, 558 (New Mexico Ct. App. 1990).. . . . . . . . . . 18

**Federal Constitution**:

**Texas Constitution**:

**Texas Statutes / Codes**:

T.R.E. 401, 402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tex. Code Crim. Proc. Ann. art. 36.14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Tex. Code Crim. Proc. Ann. art. 38.05. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Tex.Code Crim. Proc. Ann. art. 36.19.. . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

Tex.R.App. P. 21.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tex.R.App. P. 21.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tex.R.App. P. 21.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tex.R.App. P. 21.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Other References**:

TEX. DISCIPLINARY R. PROF. CONDUCT 1.15(c) (1990). . . . . . . . . . . . . . . . . . . 14

## Preliminary Statement

Pursuant to Tex.R.App.Pro. 38.1(d), the following is a brief general statement of the nature of the cause or offense:

Appellant, Arty Price, was charged by indictment with the offense of aggravated assault with a deadly weapon, family violence enhanced, a felony, in Cause No. 13-1650-K26 in the 26th District Court of Williamson County, Texas. He was convicted in said cause and was sentenced to 65 years incarceration and a 10,000 dollar fine. Motion for New Trial was filed and ruled upon and, Notice of Appeal was timely given.

## Point of Error

Pursuant to Tex.R.App.Pro. 38.1(e), the following are the points upon this appeal is predicated:

**THE TRIAL COURT ERRED IN FAILING TO ALLOW A HEARING ON APPELLANT'S MOTION FOR NEW TRIAL AND IN FAILING TO GRANT THE MOTION.**

**THE TRIAL COURT ERRED IN PREVENTING APPELLANT FROM PRESENTING EVIDENCE OF HIS DEFENSE.**

**THE TRIAL COURT ERRED IN FAILING TO PROPERLY INSTRUCT THE JURY AND SUCH WAS HARMFUL TO APPELLANT**

No. 03-14-00567-CR

IN THE
COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
OF TEXAS, AT AUSTIN

**ARTY PRICE**
Appellant

v.

**The State of Texas**
Appellee

On Appeal In Case Number 13-1650-K26
From the 26th District Court of Williamson County
The Hon. Billy Ray Stubblefield, Judge Presiding

# Brief on Appeal

TO THE HONORABLE JUDGES OF THE THIRD COURT OF APPEALS:

COMES NOW, Arty Price, Appellant in the above styled and numbered cause, by and through Ariel Payan, his undersigned attorney of record, and respectfully files this "Brief on Appeal," filed pursuant to Tex.R.App.Pro. 38.1, and would pursuant to 38.1(f) show the Court as follows:

**Facts Relevant to Appeal**

On August 30, 2014, Round Rock Police Department Officer Ben Johnson was dispatched to 1652 Bayland Rd for a disturbance. On arrival he found the victim, Migdalia

1

"Mig" Pena, in the care of her neighbors. (R.R. Vol. 7, pg. 33). She had severe injuries and required immediate medical attention. The victim was transported by EMS and Johnson interviewed the neighbors, he then went to 1704 Bayland where the victim resided. Johnson entered the premises and searched it, finding nothing out of place or any sign of a disturbance. (R.R. Vol. 7, pg. 40-41). He later went to the hospital and interviewed the victim.

The victim lives there with one of her sons, and has been living with Appellant for several months, whom she has been dating since January. (R.R. Vol. 7, pg. 126). The victim described that she works as a physician assistant for a maxillofacial surgery physician in town. (R.R. Vol. 7, pg. 123). The home she lives in is in both her name and the name of her husband Ezequiel Astacio, who used to play baseball for the Astros. (R.R. Vol. 7, pg. 128). Astacio currently lives in Philadelphia, and the victim has not seen him since 2010. The victim has two children, their father is Felix Pillot, who is very involved in his son's life and is often at the victim's home. (R.R. Vol. 7, pg. 129).

The victim testified at trial that the argument that ended in the assault started on August 29, a Thursday night. She was getting off work early so that she could go to her son's football game, this was something that was very important to her. (R.R. Vol. 7, pg. 131). She did not expect Appellant to go to the game, and was therefore quite surprised when he told her he wanted to go. The victim did not want to be late and was quite angry with Appellant when she got to the house and he was not ready to walk out immediately.

2

(R.R. Vol. 7, pg. 133). Appellant drove and had to stop for gas, while at the station he also got some food for himself. The victim started to argue with him at this point, and started yelling at him for the remainder of the drive. (R.R. Vol. 7, pg. 136). They get to the game and according to the victim, Appellant has had enough of her yelling and pushes her out of the vehicle. (R.R. Vol. 7, pg. 137-8). The victim landed on the concrete and messed up both knees on her jeans. (R.R. Vol. 7, pg. 138). The victim tells him make sure to pack up all his stuff and move out of the house by the time she gets home. The victim sits in the bleachers near Pillot who is there watching the game. Appellant shows up and sits next to her. The victim tries to go home with Pillot, but he will not drive her. She eventually gets in the vehicle with Appellant and they drive home together.

The next morning the victim calls in sick to work, so that she can 'work it out' with Appellant at home. (R.R. Vol. 7, pg. 145). Later in the day she talks to a friend of hers from work, Jaime Cruz, she talks to her in Spanish because she knows Appellant does not speak Spanish. (R.R. Vol. 7, pg. 147). As evening arrives, Appellant is telling her "I'm sick, something is wrong with me and I need help, can you please help me", the victim testified that she did not want to hear it because Appellant was being "disrespectful in all the senses". (R.R. Vol. 7, pg. 151-2). The victim makes dinner for both of them and she ends up falling asleep on the couch. She testified that she woke up when Appellant grabbed her and threw her to the hard tile ground. (R.R. Vol. 7, pg. 158). Appellant then starts punching and kicking her, and eventually drops his body weight on her. (R.R. Vol. 7, pg. 159). Appellant

3

then puts his hands on her throat and squeezes. (R.R. Vol. 7, pg. 161). Appellant eventually asks her if she wants to go to the hospital, and tries to get her to leave the house. (R.R. Vol. 7, pg. 167). The victim runs out the door and flees to the neighbor's house.

Greg White, his wife Alustree White, and their daughter Chandra White are over at the house that night. Chandra is outside and first sees the victim, she rings the doorbell multiple times to get her parents downstairs. The parents come down and find the victim on the ground next to their car. (R.R. Vol. 7, pg. 72). Appellant pulls up in his vehicle and tells them that the victim needs to go to the hospital. (R.R. Vol. 7, pg. 76). He gets out of his car and starts to approach them, at which point Greg tells his daughter to go get his gun, and Appellant returns to his vehicle. (R.R. Vol. 7, pg. 77). At which point Appellant says "my death is on your hands", or something to that effect. (R.R. Vol. 7, pg. 78).

The victim sustained serious injuries, including broken facial bones, bruises and contusions, as well as requiring surgery to fix an ulcerated colon, which required removal of part of her intestines. The victim continued to have multiple reconstructive surgeries and has lost some vision in her eye. (R.R. Vol. 7, pg. 174-181). Appellant was convicted of aggravated assault with a deadly weapon, family violence. At punishment he received a 65 year sentence and a 10 thousand dollar fine from the jury. Appellate counsel was appointed and a motion for new trial with supporting affidavits was timely filed and presented to the trial court. The trial judge ordered affidavits to be filed. Trial counsel filed an affidavit, and then the defense filed another affidavit from a witness. The trial judge did not rule on the

4

motion, which was automatically denied by operation of law. Notice of appeal was timely filed and this appeal follows.

## Summary of the Argument

Pursuant to Tex.R.App.Pro. 38.1(g), the following is a brief summary of the argument presented in this appeal:

The trial court erred in failing to grant a hearing on Appellant's motion for new trial. Trial court also erred in failing to grant Appellant's motion for new trial for ineffective assistance.

The trial court erred in not allowing Appellant to present evidence of his defense to the jury, and by limiting the scope of the evidence that was allowed to be presented to the jury.

The trial court erred in not granting the Appellant's request to modify the language in the charge at guilt/ innocence, and said denial was harmful to Appellant.

**Point of Error Restated**

**THE TRIAL COURT ERRED IN FAILING TO ALLOW A HEARING ON APPELLANT'S MOTION FOR NEW TRIAL AND IN FAILING TO GRANT THE MOTION.**

The trial judge erred in failing to hold a hearing on Appellant's motion for new trial. See Tex.R.App. P. 21.1.  A motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record.  See id.  Tex.R.App. P. 21.2.  Various grounds for granting a new trial are enumerated, but are not exclusive. See, State v. Evans, 843 S.W.2d 576, 578-79 (Tex.Cr.App. 1992); State v. Read, 965 S.W.2d 74, 77 (Tex.App.--Austin 1998, no pet .). "The State may oppose in writing any reason the defendant sets forth in the motion for new trial." Tex.R.App. P. 21.5.  In hearing the motion for new trial, the trial judge may receive evidence by affidavit or through live testimony. See id. rule 21.7.  If the sworn motions or affidavits  are offered and admitted into evidence they may serve as the basis for a granting a new trial.  See McIntire v. State, 698 S.W.2d 652, 658 (Tex.Cr.App. 1985).  Motions for new trial and their affidavits and any state sponsored controverting affidavits are pleadings, unless offered and admitted into evidence.  See Id. at 658; Stephenson v. State, 494 S.W.2d 900, 909-10 (Tex.Cr.App. 1973).

"When an accused presents a motion for new trial raising matters not determinable from the record, upon which the accused could be entitled to relief, the trial judge abuses his discretion in failing to hold a hearing." Reyes v. State, 849 S.W.2d 812, 816

6

(Tex.Cr.App. 1993). "A defendant need only assert reasonable grounds for relief which are not determinable from the record in order to be entitled to a hearing." Jordan v. State, 883 S.W.2d 664, 665 (Tex.Cr.App. 1994). However, a trial judge does not abuse its discretion in overruling a motion for new trial without a hearing unless the motion and supporting affidavits state facts that, if true, would entitle the defendant to a new trial. See Hernandez v. State, 952 S.W.2d 59, 74 (Tex.App.--Austin 1997), remanded on other grounds, 957 S.W.2d 851 (Tex.Cr.App. 1998). When a trial judge does not conduct a hearing on a motion for new trial, an appellate court must determine whether the motion and affidavits show reasonable grounds that would entitle a defendant to a hearing of the motion. See Jordan, 883 S.W.2d at 665; Garcia v. State, 960 S.W.2d 329, 333 (Tex.App.--Corpus Christi 1997, no pet.); Sandoval v. State, 929 S.W.2d 34, 36 (Tex.App.--Corpus Christi 1996, pet. ref'd).

To be sufficient to entitle the defendant to a hearing, the motion for new trial and accompanying affidavits need not establish a prima facie case for a new trial. Wallace v. State, 106 S.W.3d 103, 108 (Tex.Cr.App. 2003). Rather, they must merely reflect that reasonable grounds exist for holding that such relief could be granted. Id. The purpose of the hearing is to give a defendant the opportunity to fully develop matters raised in his motion. Id. If the trial judge denies a hearing on the motion for new trial and the defendant appeals from that denial, the appellate court must review the trial court's decision for abuse of discretion. Id. If a defendant's motion and affidavit are sufficient to meet the statutory requirements, a hearing on the motion is mandatory. Jordan, 883 S.W.2d at 665.

In the instant case, Appellant timely filed a motion for new trial with supporting affidavit alleging five instances of ineffective assistance of counsel. The motion was presented within 10 days of sentencing to the trial court, and the trial judge asked for affidavits to be presented, by order signed September 23, 2014. See CR Supp Vol 1. The trial court ordered responsive affidavit's to be presented by the State and then asked for counter affidavits from the defense. The State provided the affidavit from trial counsel, and Appellant provided an additional affidavit from another witness. The trial court did not order the requested hearing, and in the end refused to rule on the motion, despite repeated requests from appellate counsel to issue a ruling.

In the motion for new trial, Appellant alleged the following:

A.  Defendant received ineffective assistance of trial counsel. Trial counsel failed to communicate with defendant regarding status of the case, what had been done, what was going to happen prior to trial. Trial counsel failed to notify defendant about what was happening in his case.

B.  Defendant received ineffective assistance of trial counsel. Trial counsel failed to comply with client's instructions regarding what trial strategy to use during trial, and when instructed to pursue a viable and specific trial strategy failed to follow the directives of his client.

C.  Defendant received ineffective assistance of trial counsel. Trial counsel presented a defense to the jury that was directly contradicted by the evidence, and which the defendant told him to stop pursuing right after opening statement. Trial counsel refused and continued to present a defense which precluded defendant's requested mitigation defense, and denied defendant his constitutional right to his defense.

D.  Defendant received ineffective assistance of trial counsel. Trial counsel failed to call witnesses requested by defendant.

8

E.      Defendant received ineffective assistance of trial counsel. Trial counsel failed to investigate and present a mitigation case to the jury as requested by defendant.

See, CR pg., 126. Appellant's affidavit, attached to the initial filing, contained facts that if true substantiated the allegations contained in the motion. Specifically, Appellant alleged that appointed counsel first spoke to him about the facts of his case the weekend before his trial began. See, CR, pg., 131. Second, at that meeting Appellant informed trial counsel that he wished him to pursue a specific trial strategy, which trial counsel ignored. Third, Appellant had requested his previous retained attorney, Jody Sims, to get him mental health experts appointed so as to assist in presenting a mitigation case at trial. Sims was removed by the trial judge and trial counsel appointed so that new counsel could request expert witnesses from the county. Experts were never requested. Finally, Appellant requested witnesses be presented both at guilt and punishment, and provided trial counsel with names and contact information. Said witnesses were never contacted, or called as witnesses. Meledy Price, did appear, but she was never contacted by trial counsel, she appeared on her own and was called as a witness.

The State presented the affidavit of Appellant's trial counsel. The affidavit denies the allegations made by Appellant. Specifically, trial counsel avers that he met several times with Appellant at the Williamson County Jail, for lengthy meetings wherein they discussed the facts of his situation. Trial counsel states that he formulated the trial strategy he pursued before the jury from information gathered at those meetings as well as other discovery. See

9

CR Supp 2, pg. 3. Trial counsel also alleges that Appellant never instructed him to follow a certain trial strategy, nor did he tell him to change strategy after the opening statement was made. He offers no supporting information or documentation of his notification to Appellant of his trial strategy. He goes on to state that Appellant provided him with a single name to contact as a witness, and that individual was "Melody Price"[sic]. Trial counsel goes on to state that he spoke to her in advance and that he got her to agree to appear at trial and testify, as well as to provide clothing for Appellant at trial. Trial counsel also states that Appellant's assertions that he was not informed of trial dates, developments in his case, and inform him regarding State's evidence are also 'not true'. Finally, trial counsel states that he did not request the appointment of an investigator or an expert to review Appellant's sanity or his competency. "In [his] opinion such requests were not warranted by the facts and circumstances of the case." See, CR Supp 2, pg. 4.

In response to this, Appellant produces the affidavit of Meledy Lynn Price (note the spelling). Meledy's affidavit gives specific dates and details recounting her interactions with both trial counsel and Appellant during the relevant time period. See CR Supp 3, pg. 3-7. Meledy's affidavit refutes trial counsel's affidavit point for point, and offers other lay person arguments that contradict his affidavit. Specifically, she states that trial counsel did not request her to show up for trial, that she appeared without any prompting from him. That she was sworn in as a witness before she even discussed the facts that she could testify to with trial counsel. She supports these statements by recounting her cell phone records

10

which memorialize each conversation she had with trial counsel, the dates, times, and how long each conversation lasted, all of which were less than 3 minutes in length. See CR Supp 3 pg. 3-4. She goes on to state that trial counsel asked her to contact those witnesses the morning of trial, which she agreed to do because some were family members. See CR Supp 3, pg. 4.

The information provided in both of Appellant's affidavits describe facts which are not in the trial transcript, and as stated, if true, would require a new trial to be had. The conclusory affidavit of trial counsel is refuted by the affidavit of Meledy Price, and is supported by specific allegations of time and date, which evidence could have been provided to the trial judge at a motion for new trial hearing. Finally, the testimony of all the relevant parties and affiants could have and should have been subjected to cross examination at an adversarial hearing. The trial judge should have granted a hearing on the motion for new trial, or at the very least ruled on the motion presented with affidavit's in support. The question becomes was Appellant entitled to a new trial based on ineffective assistance of counsel?

**Ineffective Assistance of Counsel**

To be entitled to a new trial based on an ineffective assistance of counsel claim, a defendant must show by a preponderance of the evidence that counsel's performance was deficient and that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); Ex parte Lane, 303 S.W.3d 702, 707 (Tex.Cr.App. 2009).

The first prong requires the defendant to show counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687–88, 104 S.Ct. 2052. The second prong requires the defendant to show that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687, 694, 104 S.Ct. 2052.

Here trial counsel's performance failed to reach an objective standard of reasonableness under prevailing professional norms. The failure to inform you client, follow their directive regarding grand strategy of the case, failure to investigate the facts of the case and failure to interview and call witnesses are all violations of ethical and practice norms for the profession. As stated above, these issues were presented in the affidavits provided to the trial court. The very question that these issues exist is one which should require a hearing, and if shown require a new trial.

The second Strickland prong is that but for these errors Appellant's results of the proceeding would have been different. Appellant wanted a mitigation strategy to be presented. One where his mental health issues would be presented to the jury, where they could see that Appellant was seeking help with those mental issues. It was for this reason he had originally requested Mr. Simms request a court appointed mental health expert, which led to his removal and the appointment of trial counsel. This information, as alleged in Appellant's affidavit was all provided to trial counsel at the beginning of his representation. On the other hand, trial counsel's strategy was to allege that Appellant did

12

not commit the crime and it was done by the estranged husband, who lived in another state. The basis of this strategy was a single statement made by the victim in the hospital that referenced her 'husband' as the perpetrator, and was later corrected multiple times to state 'boyfriend'. This was further refuted by the three eyewitnesses other than the victim who saw Appellant at the house moments after the assault, as well as one witness observe him grab the victim prior to the assault. But the most glaring problem was the issue of Appellant's sandal. The victim stated that she was kicked by Appellant, she had distinctive bruising on her face and body which was photographed, and said photos introduced at trial. Appellant, when he was arrested, was wearing sandals. These sandals contained a unique tread pattern which matched the size shape and outline of the bruises on the victim's body. This information was provided in the discovery, and presumably to trial counsel, and the State argued that these were the shoes that Appellant used to strike the victim. In light of this information, which should have been discovered prior to trial, the defense of 'some other dude did it' is farcical. As such it affected Appellant's ability to ask for mercy at punishment. Further, trial counsel's strategy at punishment failed to present the requested mental health analysis and review of Appellant's mental state at the time of the assault. Evidence of mitigation which was entirely unexamined, as per trial counsel's own affidavit.

Finally, trial counsel also stated that he was never provided any potential mitigation witnesses other than Meledy Price. Meledy states in her affidavit that she was never

13

contacted about testifying, and that she showed up on her own to do so. Further that trial counsel asked her to contact the other witnesses that were provided to trial counsel by Appellant. The delegation of the important task of developing mitigation evidence was inconsistent with trial counsel's professional obligation to conduct a reasonable investigation into his client's background and to evaluate whether the information discovered would be helpful in mitigating against the State's evidence on punishment. See Williams v. Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 1514–15, 146 L.Ed.2d 389 (2000); Rivera v. State, 123 S.W.3d 21, 31 (Tex.App.–Houston [1st Dist.] 2003, pet. ref'd); TEX. DISCIPLINARY R. PROF. CONDUCT 1.15(c) (1990).

For the punishment phase, the appellate court's inquiry is whether there is a reasonable probability that the assessment of punishment would have been less severe in the absence of defense counsel's deficient performance. Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542 (2003); Lair v. State, 265 S.W.3d 580, 594 (Tex.App.–Houston [1st Dist.] 2008, pet. ref'd). Prejudice is established if the probability that the outcome would have been different is "sufficient to undermine confidence in the outcome" of the proceeding. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Andrews v. State, 159 S.W.3d 98, 102 (Tex.Cr.App. 2005). The "ultimate focus" is whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Strickland, 466 U.S. at 696, 104 S.Ct. at 2069.

"The sentencing process consists of weighing mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus." Shanklin v. State, 190 S.W.3d 154, 165 (Tex.App.–Houston [1st Dist.] 2005, pet. dism'd). Thus, the adversarial process is hindered if the fact finder is denied access to powerful mitigating evidence, leaving only the aggravating factors for its consideration. See Williams v. Taylor, 529 U.S. 362, 395-99, 120 S.Ct. 1495, 1514–16 (2000)(holding that defendant was prejudiced by counsel's ineffectiveness in not investigating or presenting mitigating evidence, including "nightmarish" childhood, repeated past sexual assaults during his youth, extremely low IQ, and several positive character references from professionals in community who had witnessed defendant excel in structured environments).

When defense counsel presents "no evidence of mitigating factors ... to balance against the aggravating factors presented by the State" and fails to do so because he did not investigate mitigating factors or contact potential mitigation witnesses, there is prejudice. Shanklin, 190 S.W.3d at 165. Prejudice exists, in that context, because there is not even a possibility of the fact finder considering mitigating evidence. See id. at 165–66 ("We conclude that appellant has demonstrated prejudice in this case.... [D]efense counsel's failure to interview or call a single witness, other than appellant, deprived him of the possibility of bringing out even a single mitigating factor."); Lair, 265 S.W.3d at 595–96.

Here trial counsel presented a single witness, Meledy Price. The questions asked of Meledy involved Appellant's prior probation and the facts surrounding that. No mitigation

evidence was presented through this witness about Appellant's mental status or health, or history as it related to positive attributes of his life. No mitigation evidence was presented, no other evidence was introduced by the defense at trial. Prejudice exists, because there is not even a possibility of the fact finder considering mitigating evidence which was never investigated or presented.

Trial counsel's failure to investigate, consult, and follow the strategic directives of his client are ineffective. The strategy used at trial failed to take into account the State's evidence, and the failure to investigate or present mitigation evidence harmed Appellant's case before the jury and failed to mitigate the aggravating factors presented and said failure prejudiced Appellant's case. The trial judge abused its discretion in overruling Appellant's motion for new trial without a hearing. Appellant would respectfully request that this Court so find and reverse and remand for a new trial based upon ineffective assistance of trial counsel, failing that Appellant would request this Court remand for a motion for new trial hearing.

**THE TRIAL COURT ERRED IN PREVENTING APPELLANT FROM PRESENTING EVIDENCE OF HIS DEFENSE.**

16

The United States Constitution guarantees that criminal defendants will have "a meaningful opportunity to present a complete defense." Gilmore v. Taylor, 508 U.S. 333, 343 (1993); Crane v. Kentucky, 476 U.S. 683 (1986); California v. Trambetta, 467 U.S. 479 (1984). The Supreme Court described the different ways an individual can avail themselves of this in Washington v. Texas, 388 U.S. 14 (1967):

> The right to offer the testimony of witnesses, and to compel their attendance if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

Id., at 19, 87 S.Ct. 1920. This principle has been invoked in cases where courts have intimidated defense witnesses into silence, see e.g., Webb v. Texas, 409 U.S. 95 (1972), and where courts have excluded otherwise admissible evidence. See Crane v. Kentucky, 476 U.S. at 693; Chambers v. Mississippi, 410 U.S. 284 (1973).

In Chambers, the trial court applied the rules of evidence to bar the admission by the defendant in support of his defense that another man, McDonald, admitted he had committed the crimes. 410 U.S. at 287. The Supreme Court reversed, explaining that "the right of an accused to due process is, in essence, the right to a fair opportunity to defend against state accusations. The right to call witnesses in one's own behalf has long been recognized as essential to due process." Id. at 294. Furthermore, Justice Black described the right to present evidence in one's own defense as a critical component of our criminal justice system:

> A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his own defense - - a right to his day in court - - are basic in our system of jurisprudence, and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

In re Oliver, 333 U.S. 257, 273 (1948). It is the calling of witnesses and the presentation of evidence which is the fundamental core of our legal system. The accused has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule. See Chambers v. Mississippi, 410 U.S. at 302; New Mexico v. Duncan, 830 P.2d 554, 558 (New Mexico Ct. App. 1990); Commonwealth of Pennsylvania v. Greene, 366 A.2d 234, 237 (Penn.S.Ct. 1976). If a defendant can show a need for a particular witness a trial court must allow that witness to testify, unless that testimony falls under the evidentiary rules of exclusion.

Evidence must satisfy two requirements to be considered relevant: first, materiality, and second, probative. See, T.R.E. 401, 402. For evidence to be material it "must be shown to be addressed to the proof of a material proposition, i.e., 'any fact that is of consequence to the determination of the action.' 'If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial.'" 1 Steven Goode et al., Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal § 401.1 (2d ed. 1993 & Supp. 1995). If the proponent establishes that the proffered evidence is material, Rule 401 also requires that the proponent establish the evidence is probative, i.e., the proffered evidence must tend to make the existence of the fact "more or less probable than it would

18

be without the evidence." Id. The proffered evidence is relevant if it has been shown to be material to a fact in issue and if it makes that fact more probable than it would be without the evidence.

In United States v. McClure, 546 F.2d 670 (5th Cir. 1977), the Fifth Circuit held that the defendant's "right to present a vigorous defense required the admission of the proffered testimony." Id., at 673. The Fifth Circuit did not find the evidence of coercive threats to be irrelevant merely because they took place after the defendant committed the offense for which he was on trial. See also United States v. Herrera, 600 F.2d 502, 505 (5th Cir. 1979). The Fifth Circuit did not give an opinion on whether it believed the defendant's defense was credible. The Fifth Circuit decided, instead, that "a jury could not properly convict him absent the opportunity to hear the proffered testimony bearing upon the theory of defense and weigh its credibility along with the other evidence in the case." McClure, 546 F.2d at 673.

In Miller v State, 36 S.W.3d 503 (Tex.Cr.App. 2001), the Court of Criminal Appeals determined that the refusal to allow the admission of evidence of duress was reversible error. In that case the Court was faced with a situation where the defendant had introduced some evidence of duress, and was attempting to introduce further evidence of coercion that occurred several hours after the crime the defendant was charged with had been committed. The Court held that preclusion of that evidence violated a defendant's right to present a defense and was therefore reversible. Miller 36 S.W. 3d at 508.

On rehearing the Third Court of Appeals in Miller v State, 42 S.W.3d 343 (Tex.App.-Austin 2001), held that the exclusion of the evidence of duress after the commission of the charged crime could not be deemed harmless error. The Third Court stated:

> But while we do not necessarily believe the jury would have acquitted [Miller] but for the court's error, we cannot state with fair assurance that the excluded testimony would have had no effect, or but slight effect, on the jury's consideration of [Miller's] affirmative defense. See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (conviction should not be overturned for non-constitutional error if appellate court, after examining whole record, has fair assurance that error did not influence jury, or had but slight effect). We intimate no opinion as to the credibility of [Miller's] duress defense. We decide only that, on this record, [Miller] was harmed when the jury was not given the opportunity to hear testimony relevant to [her] defense and assess its credibility along with the other evidence in the case.

Miller 42 S.W.3d at 347. The Court noted that because a defendant bears the burden of persuasion in proving an affirmative defense evidence supporting that defense must be presented to a jury for the fact finder to decide what weight to give it. Id, at 346-347. The Court did not believe that the precluded evidence would have acquitted Miller, but still reversed and remanded for a new trial, solely because the evidence was precluded from admission.

In the instant case, the trial attorney's strategy was to attempt to show that the victim was assaulted by her estranged husband, Ezequiel Astacio, who lives in Philadelphia, and that she is now trying to accuse Appellant to cover Astacio whose name on her home mortgage. In an effort to accomplish this, the defense presents two prior Round Rock Police

20

reports at that address. The first is from September 21, 2009 and the second was from November 6, 2011, both involved the same victim as in this case. A hearing was held outside the presence of the jury and the trial judge denied the defense the ability to discuss the 2009 incident in its entirety, and denied the defense the ability to introduce the police report of either incident. The defense was allowed to ask the victim about whether the 2011 incident occurred for impeachment purposes. (R.R. Vol. 8, pg., 9). The defense asked the very limited scope of questions allowed by the trial judge, and made a bill of exceptions and introduced the exhibits for the record only. (R.R. Vol. 9, pg. 6). (C.R. Vol. 1, pg 99, & 108).

The reports and the 2009 incident all relate to the victim's desire to protect Astacio, which was trial counsel's theory of the defense. The 2009 incident involved Astacio engaging in a verbal argument and then breaking things at the home, and leaving. See (C.R. Vol. 1, Ex BE-1A pg., 101). The report goes on to say that although Astacio did not hit her, victim thought he was going to hit her, and was threatening to hit her . See (C.R. Vol. 1, Ex BE-1A pg., 104). The 2011 incident again occurred at the home between Astacio and the victim. The report states that Astacio had been physical with the victim in the past, that the victim was hiding in her bedroom and that they are in the middle of a divorce. See (C.R. Vol. 1, Ex BE-1B pg., 112). Finally, the report states that the victim asked the neighbor not to call the police. Both of these incidents and the written reports go to the credibility of the victim and the heart of the defense.

A party may always attack a witness's credibility by cross-examination that tends to reveal biases, prejudices, or ulterior motives affecting the witness's testimony. Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105 (1974); Koehler v. State, 679 S.W.2d 6, 9 (Tex.Cr.App. 1984). The motive operating on a witness's state of mind while testifying is not a collateral matter. "When the evidence shows bias or a motive for the witness to testify untruthfully, there is an exception to the prohibition on cross-examination or extrinsic evidence concerning a witness's specific instances of conduct." Sparks v. State, 943 S.W.2d 513, 517 (Tex.App.—Fort Worth 1997, pet. ref'd).

The evidence requested is material because it shows that the victim was trying to protect Astacio, from police involvement, and according to the trial attorney's defensive strategy that would go to show that Astacio was the actual perpetrator in this crime. The evidence presented by Appellant and sought to be admitted at his trial is probative to the determination of the witnesses credibility and truthfulness in the presentation of the State's evidence. The Appellant respectfully requests that this Court so find, and reverse the case back to the trial court for a new trial.

## THE TRIAL COURT ERRED IN FAILING TO PROPERLY INSTRUCT THE JURY AND SUCH WAS HARMFUL TO APPELLANT

The procedure to review jury charge error is prescribed in article 36.19 of the Texas Code of Criminal Procedure. Tex.Code Crim. Proc. Ann. art. 36.19; see Almanza v. State, 686 S.W.2d 157, 171 (Tex.Cr.App. 1984). The court must determine: (1) whether error actually existed in the charge, and (2) whether sufficient harm resulted from the error to result in a reversal. See Posey v. State, 966 S.W.2d 57, 60 (Tex.Cr.App. 1998). The standard of harm required for reversal depends on whether trial counsel objected. See Abdnor v. State, 871 S.W.2d 726, 732 (Tex.Cr.App. 1994). If a timely objection was made at trial, then the appellate court needs only find "some harm." See Almanza, 686 S.W.2d at 171. By contrast, if the first complaint of charge error is made on appeal, then the appellate court must find "egregious harm." See id.

In the instant case, trial counsel requested that the application paragraph of the charge at guilt or innocence be modified. Trial counsel objected to the language on page 3-4, specifically, "and used or exhibited a deadly weapon, namely, the defendant's hand or foot or body, during the commission of the assault,". Counsel requested that the Court substitute the following, "and used or exhibited his hand, foot, or body as a deadly weapon, during the commission of the assault.". See (R.R. Vol. 8, pg. 195-6). The defense objected to the language on the basis that it was am impermissible comment on the weight of the evidence.

23

Article 36.14 of the Code of Criminal Procedure prohibits a trial judge from delivering a charge that expresses any opinion as to the weight of the evidence. Tex. Code Crim. Proc. Ann. art. 36.14. The primary reason for the rule is that an instruction by the trial judge to the jury on the weight of the evidence reduces the State's burden of proving guilt beyond a reasonable doubt. Brown v. State, 122 S.W.3d 794, 798 (Tex.Cr.App. 2003), cert. denied, 541 U.S. 938, 124 S.Ct. 1678 (2004). As recognized in Lagrone v. State, "[j]urors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved." Lagrone v. State, 84 Tex.Crim. 609, 615-16, 209 S.W. 411, 415 (1919). Therefore, trial judges must refrain from making any remark calculated to convey to the jury their opinion of the evidence in a particular case. Tex. Code Crim. Proc. Ann. art. 38.05. To the jury, the language and conduct of the trial court have a special and peculiar weight. See Livingston v. State, 782 S.W.2d 12, 14 (Tex.App.—Dallas 1989, pet. ref'd).

The trial court's comment constitutes reversible error if such comment is either reasonably calculated to benefit the State or to prejudice the defendant's right to a fair and impartial trial. Sharpe v. State, 648 S.W.2d 705, 706 (Tex.Cr.App. 1983). To determine whether the comment is either reasonably calculated to benefit the State or to prejudice the defendant, the Court must first examine whether the trial court's statement was material to the case. Burge v. State, 443 S.W.2d 720, 724 (Tex.Cr.App. ), cert. denied, 396 U.S. 934,

24

90 S.Ct. 277 (1969). An issue is material if the jury had the same issue before it. See Jackson v. State, 548 S.W.2d 685, 695 (Tex.Cr.App. 1977). A trial court improperly comments on the weight of the evidence if it makes a statement that:

> (1) implies approval of the State's argument, Ward v. State, 156 Tex.Crim. 472, 243 S.W.2d 695, 696–97 (1951);
>
> (2) indicates any disbelief in the defense's position, McClory v. State, 510 S.W.2d 932, 934 (Tex.Cr.App. 1974);
>
> (3) diminishes the credibility of the defense's approach to its case, see, e.g., Jackson v. State, 756 S.W.2d 82, 85 (Tex.App.—San Antonio 1988), rev'd on other grounds, 772 S.W.2d 117 (Tex.Cr.App. 1989).

Clark v. State, 878 S.W.2d 224 (Tex.App.- Dallas 1994).

The language contained in the charge is in the assertive, meaning it is a statement of fact and not couched as a question. As such it is a comment on the evidence presented at the guilt/innocence phase of trial and should have been modified as requested.

Whenever it appears by the record in any criminal action upon appeal [that a charge error has occurred], the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of trial. Tex.Code Crim. Proc. Ann. art. 36.19.

Under Almanza v. State, 686 S.W.2d at 157 (Tex.Cr.App. 1984), the appropriate harm analysis depends upon whether the defendant preserved error by bringing the improper

25

omission to the trial court's attention. When the error is properly preserved, a reversal is required if "some harm" is shown. But when the defendant has failed to preserve error, he must show egregious harm. The difference in harm standards impacts how strong the non-accomplice evidence must be for the error in omitting an accomplice witness instruction to be considered harmless. Herron v. State, 86 S.W.3d 621, 632 (Tex.Cr.App. 2002).

Here trial counsel objected and requested a specific charge. The Court should utilize the 'some harm' standard in its analysis of this point of error. Appellant respectfully requests that this Court render any and all relief to which he is entitled.

## Prayer

WHEREFORE, PREMISES CONSIDERED, ARTY PRICE, Appellant in the above styled and numbered cause respectfully prays that this Court grant him any and all relief to which he is entitled.

Respectfully submitted,

**ARIEL PAYAN**
Attorney at Law
1012 Rio Grande
Austin, Texas 78701
Tel. 512/478-3900
Fax: 512/472-4102
Arielpayan@hotmail.com

by: /s/ Ariel Payan
**Ariel Payan**
State Bar No. 00794430

Attorney for Appellant

## Statement Regarding Oral Argument

Oral Argument is Not Requested

## Certificate of Compliance

By my signature above I hereby certify pursuant to T.R.A.P. 9.4(i)(3), the word count for this document, as determined by the word processing program is ___6755___ .

/s/ Ariel Payan
**Ariel Payan**

27

## Certificate of Delivery

This is to certify that a true and correct copy of the above and foregoing "Appellant's Brief on Appeal" was hand-delivered, mailed postage pre-paid or transmitted via telecopier (*fax*) or email to the  office of the District Attorney of Williamson County, Texas; and to Appellant at the address listed in the Certificate of Parties, on October 1, 2015.


_/s/ Ariel Payan_____
**Ariel Payan**